UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : 3:15-CR-151 |
| | : (Judge Mariani) |
| ANGEL PRADO, | : |
| | : |
| Defendant. | : |

MEMORANDUM OPINION

Before the Court is Defendant Prado's Amended Motion to Suppress Physical Evidence and Incriminating Statements (Doc. 66). After viewing the video evidence and the testimony of two evidentiary hearings, the Court finds that additional briefing is required.

I. BACKGROUND

The Court provides a brief account of events pertinent to the initial traffic stop that led to Defendant Prado's arrest. On December 19, 2013, Pennsylvania State Trooper Paul Lindsay initiated a traffic stop on Interstate 80 in Monroe County, Pennsylvania, at approximately 9:58 A.M., for a violation of 75 Pa.C.S. § 3309, driving on roadways laned for traffic. (Doc. 74, 6/9/16 Tr., at 25:22-24.) Trooper Lindsay testified that Defendant Prado crossed over the white fog line and traveled on the right shoulder for a couple of seconds. (Id. at 7:13-15; 26:2-3; 27:4-6.) Trooper Lindsey testified, and the video evidence shows, that Defendant Prado was traveling on a straightaway and was not in danger of facing any oncoming traffic or vehicles on the side of the road. (Id. at 27:21-28:4; Govt. Ex. 7, Video.) Trooper Lindsay testified that it was the only motor vehicle violation he observed with

respect to Defendant Prado's driving. (Id. at 26:11-13.) Trooper Lindsey testified that he thought this motor vehicle violation could have been the result of Defendant Prado being sick or under the influence (Id. at 26:2-6), and that he was concerned for Defendant Prado's safety, as the shoulder of the road had some snow and ice accumulation (Id. at 29:20-24). As a result, Trooper Lindsay initiated a traffic stop. (Id. at 7:22-23.)

## II. DISCUSSION

It is incumbent upon the Court at this stage, to find the facts and weigh the credibility of the witnesses. After review of the video evidence, testimony of the two suppression hearings, and relevant case law, the Court has a grave concern of whether the initial traffic stop was proper. At the suppression hearing held before this Court, defense counsel objected to Trooper Lindsay's characterization of the video with respect to Defendant Prado's alleged violation of Section 3309(1), leaving it to the Court to determine what the video depicted. (Doc. 84, 12/13/16 Tr., at 35:9-14.) Defense counsel then contradicted himself in a footnote in his post-hearing brief, stating that Defendant Prado "does not contest the propriety of the initial stop for violation of § 3309 of the Pennsylvania Motor Vehicle Code." (Doc. 85 at 4 n. 2.)

As the factfinder, the Court cannot ignore the indisputable video evidence, which does not show Defendant Prado crossing the white fog line at any time. The video evidence does show that at one point, Defendant Prado appeared to be riding alongside

and possibly touching the left side of the line with the right side of his passenger side tire. At another point, Defendant Prado's right tire appears to be riding on the line for a few seconds, but at no point does the right tire ever cross the white fog line. In light of federal and Pennsylvania case law, the parties shall address whether the Defendant's actions violated Section 3309(1) in a manner such that there was probable cause to pull Defendant's car over.

When asked whether it is a traffic violation in Pennsylvania when someone weaves over and crosses the line, Trooper Lindsay answered in the affirmative. (Doc. 74, 6/9/16 Tr., at 7:19-21.) The Court finds this statement inconsistent with the statutory language of Section 3309(1) and relevant case law, which suggests that it is not a per se violation. Section 3309(1) states,

> (1) **Driving within single lane.** – A vehicle shall be driven *as nearly as practicable* entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S. § 3309(1) (emphasis added). Safety considerations and whether the deviation from the lane was "momentary and minor" are taken into account when determining whether the officer had probable cause to make a stop for a violation of Section 3309(1). See Commonwealth v. Gleason, 785 A.2d 983 (Pa. 2001) (superseded by 75 Pa.C.S. §

3

6308(b))[1] (finding that a lack of evidence of a safety hazard precluded finding that probable cause existed for a Section 3309(1) violation); Commonwealth v. Anderson, 2005 Pa. Super. 407 (2005) (finding infractions not "momentary and minor"); see also Commonwealth v. Chase, 960 A.2d 108, 116 (Pa. 2008) (distinguishing the circumstances of when reasonable suspicion and probable cause are required to make a stop); Commonwealth v. Feczko, 10 A.3d 1285 (Pa. Super. Ct. 2010) (en banc) (applying the probable cause standard to a stop made under section 3309(1)).

The statutory language, "as nearly as practicable," permits minor deviations from the lane, as evidenced by case law on the subject. See Commonwealth v. Enick, 70 A.3d 843, 847 (Pa. Super. Ct. 2013) (finding the statutory language of Section 3309(1) does not foreclose minor deviations). For example, in Gleason, the officer observed the vehicle cross the solid fog line two or three times, and the Pennsylvania Supreme Court found that probable cause did not exist for a Section 3309(1) violation.

Additionally, in Commonwealth v. Turney, 2005 Pa. D. & C. Lexis 498 (Armstrong

---

[1] 75 Pa.C.S.A. § 6308(b) is the general rule for the level of suspicion required for a police officer to effectuate a stop. Section 6308(b) allows an officer to effectuate a stop if the officer has reasonable suspicion that a violation has occurred or is occurring. Section 6308(b) only applies to offenses that require further investigation to determine whether a motorist committed that offense. See Commonwealth v. Ibrahim, 127 A.3d 819, 822-824 (Pa. Super. Ct. 2015). "[S]ome offenses, by their very nature, require a police officer to possess probable cause before he or she may conduct a traffic stop." Id. at 823. An officer must have probable cause to pull someone over for a Section 3309(1) violation, as further investigation is not required to determine whether the offense was committed. See Chase, 960 A.2d 108 (reaffirming Gleason's probable cause standard for non-investigatory stops for a motor vehicle code violation).

Cnty. 2005), the court found that probable cause did not exist when the motorist "crossed the fog line on two occasions and then crossed over the fog line completely so that the driver side tires touched the fog line and the vehicle itself was on the berm." Turney, 2005 Pa. D. & C. Lexis 498, at *3, 7. The court noted that Pennsylvania courts have not found that probable cause exists if the driving infraction is "momentary and minor," as compared to more serious driving infractions that were sufficient to find probable cause. Id. at *4-5 (citations omitted). The court also mentioned the absence of facts that go to the safety consideration of Section 3309(1). See id. at *7-8.

In comparison, in Commonwealth v. Anderson, 2005 Pa. Super. 407 (2005), the Superior Court of Pennsylvania found that the officer had probable cause when a motorist crossed over the double yellow lines two or three times, straddled the double yellow lines with half of the vehicle driving in the other lane for two blocks, and repeatedly stopped his vehicle for unexplained reasons. Anderson, 2005 Pa. Super. at 16. The court found that these infractions were not "momentary or minor" and created a hazard to himself and others. Id.

Courts require evidence of a safety hazard before finding that probable cause existed for a violation of Section 3309(1). As Section 3309(1) dictates, a vehicle "shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety." 75 Pa.C.S. § 3309(1). In Gleason, the Pennsylvania Supreme Court

emphasized that evidence of a safety hazard must exist for an officer to have probable cause. Gleason, 785 A.2d at 121. In Gleason, the court found that there was a lack of evidence that the motorist's driving created a safety hazard, even though the vehicle crossed the solid fog line two or three times over approximately one quarter mile. Id. at 115, 121. The court stated that "[t]he lack of evidence at the suppression hearing that Appellant's driving created a safety hazard leads us to agree with the trial court that there was insufficient evidence to support a Section 3309(1) violation." Id. at 121.

In Commonwealth v. Thrower, 2013 Pa. Super. Unpub. Lexis 4077 (Pa. Super. Ct. 2013), an unpublished opinion by the Superior Court of Pennsylvania, probable cause was found not to exist when, absent any safety hazard, the motorist's vehicle "touched the double yellow line on three occasions and the white fog line on four occasions within one and a half miles and one minute," his "tires did not travel into the oncoming lane, and he crossed the white fog line once by six inches and once by a foot." Thrower, 2013 Pa. Super. Unpub. Lexis 4077, at *15. The court found that the record did not contain specific facts of a safety hazard, as the officer testified that he did not recall other vehicles on the roadways, or persons or objects along the side of the road. Id. "Without the safety hazard element, there is no nexus between Appellant's driving and probable cause to stop him for violating section 3309(1)." Id. at *15-16.

A safety hazard and probable cause were found to exist in Commonwealth v.

Feczko, 10 A.3d 1285 (Pa. Super. Ct. 2009) (en banc), when an officer observed the motorist's vehicle "briefly cross over the double yellow median line and enter the oncoming lane of travel while negotiating a curve in the road," "gradually sway[] within the lane, crossing over the white fog line two or three times," and then drift over the double yellow median line for a second time. Feczko, 10 A.3d at 1286. The court noted that the oncoming traffic and the motorist's deviations from his lane of travel created a "significant safety hazard on the roadway." Id. at 1291-92.

Additionally, in Commonwealth v. Spencer, 2012 Pa. D. & C. Lexis 117 (Allegheny Cnty. 2012), the court found that the police officer had probable cause to stop the motorist for a Section 3309(1) violation when the officer testified that the motorist was driving in an unsafe manner. Spencer, 2012 Pa. D. & C. Lexis 117, at *10-11. Specifically, the officer testified that the motorist drove on the white lines that separated the two same direction travel lanes, straddled the solid white line for 100 to 200 feet, then continued to swerve back and forth between the two same direction travel lanes three to four times over the next 100 feet. Id. at *5.

In the instant case, the Court is confronted with clear video evidence that shows that Defendant Prado did not cross over the white fog line at any time. In light of the Court's role to weigh the credibility of witnesses and find the facts at this stage, the Court finds that additional briefing is required. Accordingly, the parties are directed to brief two issues: (1)

whether the Court may address the propriety of the initial traffic stop in light of what appears to be a waiver of this issue by Defendant's counsel; and (2) whether the initial traffic stop was valid.

Robert D. Mariani
United States District Judge