THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : 3:15-CR-151 |
| | : (JUDGE MARIANI) |
| ANGEL PRADO, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

On July 9, 2018, Prado pleaded guilty to possession with the intent to distribute in excess of one kilogram of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 21 U.S.C. § 2. (Doc. 150 at 1). Presently before the Court is Angel Prado's *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. 161). For the reasons stated below, the Court will deny Prado's Motion.

### II. STATEMENT OF FACTS

On December 19, 2013, Pennsylvania State Trooper Paul Lindsay was patrolling a section of Interstate 80 in Monroe County, Pennsylvania while assigned to the Safe Highway Initiative through Effective Law Enforcement Detection unit ("SHIELD unit"). (Doc. 74 at 5, 7; Doc. 84 at 22-23). Trooper Lindsay testified:

> As I was traveling in the left lane, the Defendant ... was driving a Honda Odyssey. I saw him veering over into the shoulder of the road over into the fog line. I don't know if he was falling asleep, or he was under the influence of something, or he was having a medical issue, and I took action.

(Doc. 74 at 7). Thereafter, Trooper Lindsay initiated a traffic stop for violation of 75 Pa. C.S. § 3309, driving on roadways laned for traffic. (*Id.* at 25-26; Doc. 84 at 23).

While verifying Prado's information, Trooper Lindsay discovered that Prado had two prior arrests for drug offenses under the alias Raul Garcia. (Doc. 74 at 12; Doc. 84 at 37-38). Trooper Lindsay then asked Prado for his Social Security Number and determined that it matched the Social Security Number associated with his alias, so he requested a canine unit to the scene. (Doc. 74 at 12; Doc. 84 at 38-39). He went back to Prado's vehicle and asked him to exit, at which time Trooper Lindsay gave Prado a written warning for the traffic violation and asked him a series of questions regarding where he was going and whether his car contained anything illegal. (Doc. 74 at 14-16; Doc. 84 at 40-41). Prado told Trooper Lindsay that he could check the car if he wanted. (Doc. 95 at 4). After Prado signed a Spanish language version of the Pennsylvania State Police Waiver of Rights and Consent to Search form, Trooper Lindsay searched Prado's car and found six kilograms of heroin. (Doc. 74 at 22). Prado was then arrested. (Doc. 95 at 4; Doc. 74 at 16, 22; Doc. 84 at 43).

On July 21, 2015, a federal grand jury indicted Prado for possession with intent to distribute in excess of one kilogram of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 21 U.S.C. § 2. (*See* Doc. 50). On November 30, 2015, Prado filed an Amended Motion to Suppress Physical Evidence of Incriminating Statements with Supporting Brief. (Doc. 66). Judge Kosik held an evidentiary hearing on June 9, 2016 in response to Defendant's Motion. (*See* Doc. 74). The above-captioned matter was then

reassigned to the undersigned, who held a second evidentiary hearing on the same motion on December 13, 2016, and the parties filed supporting briefs thereafter. (*See* Doc 84; Doc. 85; Doc. 86; Doc. 87).

On February 15, 2017, the Court issued a Memorandum Opinion ruling on Defendant's Motion to Suppress, finding:

> As the factfinder, the Court cannot ignore the indisputable video evidence, which does not show Defendant Prado crossing the white fog line at any time. The video evidence does show that at one point, Defendant Prado appeared to be riding alongside and possibly touching the left side of the line with the right side of his passenger side tire. At another point, Defendant Prado's right tire appears to be riding on the line for a few seconds, but at no point does the right tire ever cross the white fog line.

(Doc. 91 at 2-3). Because the video evidence conflicted with Trooper Lindsay's stated reason for stopping Prado's car, the Court Ordered the parties to brief the following issues: "[w]hether the Court may address the propriety of the initial traffic stop in light of what appears to be a waiver of this issue by Defendant's counsel" and "[w]hether the initial traffic stop was valid." (Doc. 92 at 1). Both Prado and the Government submitted supplemental briefs in response to the Order. (Doc. 93; Doc. 94).

On May 1, 2017, this Court issued a Memorandum Opinion addressing the above issues. (Doc. 95). The Court denied Prado's Motion to Suppress and explained:

> The traffic stop was based on reasonable suspicion and therefore did not violate the Fourth Amendment. Accordingly, the Court will deny Defendant's Motion to Suppress on this basis. In so ruling, however, the Court notes that this outcome is largely a result of the lower federal standard of reasonable suspicion. Trooper Linds[a]y's decision to stop Defendant's car when he did barely passes constitutional muster and the Court is dismayed that such a

3

highly trained Pennsylvania State Trooper would approach the boundaries of unconstitutional action so closely.

(Doc. 95 at 11-12).

Prado ultimately pleaded guilty to possession with intent to distribute in excess of one kilogram of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 21 U.S.C. § 2 and was sentenced to a term of imprisonment of 120 months. (*See generally* Doc. 150). As part of his verbal plea agreement, the Government agreed that Prado could preserve his right to appeal this Court's ruling on his Motion to Suppress.

Prado timely filed a Notice of Appeal (Doc. 154) on December 17, 2018 and claimed that this Court erred in finding that Trooper Lindsay had reasonable suspicion to stop Prado's vehicle for a suspected traffic violation. The Third Circuit affirmed the Court's ruling on January 24, 2020. *United States v. Prado*, 788 F.App'x 897, 897 (3d Cir. 2019), *cert. denied*, 141 S.Ct. 339 (Oct. 5, 2020) ("Although we share the District Court's 'dismay[ ]' with the arresting officer's limited justification for initiating this traffic stop, for the reasons that follow, we will affirm the District Court's denial of Prado's motion to suppress the heroin that was seized." (footnote omitted)).

On December 21, 2020, Prado filed the instant Motion to Vacate, Set Aside, or Correct pursuant to § 2255 (Doc. 161). The Government filed a Brief in Opposition (Doc. 169),[1] and Prado filed a Reply Brief (Doc. 174) thereafter. The Motion is now ripe.

---

[1] The Court notes the deficiency of the Government's Brief in Opposition (Doc. 169) to Prado's Motion. The substance of Government's Brief is four and a half pages and fails to provide the Court with

4

### III. STANDARD OF REVIEW

#### a. 28 U.S.C. § 2255

A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final, move the sentencing court to "vacate, set aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A federal prisoner may also file a § 2255 motion within one year from "[t]he date on which the right asserted was initially recognized by the Supreme Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. 2255(f)(3). A § 2255 motion may attack a federal prisoner's sentence on any of the following grounds: (1) the judgment was rendered without jurisdiction; (2) the sentence imposed was not authorized by law or otherwise open to collateral attack; or (3) there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. 28 U.S.C. § 2255(b).

Section 2255 does not, however, afford a remedy for all errors that may have been made at trial or sentencing. *United States v. Essing*, 10 F.3d 968, 977 n.25 (3d Cir. 1993). Rather, § 2255 permits relief for an error of law or fact constituting a "fundamental defect

---

any analysis of Prado's claims. Instead, it is a blanket recitation of the relevant facts and applicable law that governs § 2255 motions. (Doc. 169 at 1-5). The Government fails to accompany its statement of law with the Government's position on Prado's three grounds for relief, and leaves the Court guessing as to how the law provided by the Government connects to Prado's Motion.

which inherently results in complete miscarriage of justice." *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (citing *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Relief is available under Section 2255 only under exceptional circumstances, when the claimed errors of law are "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428, (1962). If the court determines that the sentence was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, the court may vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. *See* 28 U.S.C. § 2255(b).

Section 2255 also directs that, in some instances, the court "shall" hold an evidentiary hearing.

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). In *United States v. Booth*, 432 F.3d 542 (3d Cir. 2005), the Court of Appeals for the Third Circuit explained the court's discretion in these matters:

> Although a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255, our caselaw has imposed limitations on the exercise of that discretion. In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir.1989). *See also* R. Governing § 2255 Cases R. 4(b). The District court is required to hold an evidentiary hearing "unless the motion and

6

files and records of the case show conclusively that the movant is not entitled to relief." *Id.* We have characterized this standard as creating a "reasonably low threshold for habeas petitioners to meet." *McCoy,* 410 F.3d at 134 (quoting *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir. 2001)). Thus, the district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing.").

432 F.3d at 545-46. Generally, the petitioner bears the burden of proof in § 2255 proceedings. *See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977).

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are properly raised on collateral review rather than on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must demonstrate "(1) that counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (*citing Strickland*, 466 U.S. at 689-92). The petitioner bears the burden of establishing that counsel's performance prejudiced the defense. *Marshall v. Hendricks*, 307 F.3d 36, 89 (3d Cir. 2002).

### IV. ANALYSIS

On December 21, 2020, Prado filed the instant Motion to Vacate, Set Aside, or Correct pursuant to § 2255. In his Motion, Prado asserts three grounds for relief based on

7

ineffective assistance of counsel. (*See generally* Doc. 161; Doc. 162; Doc. 174). The Court will discuss each ground for relief below.

### a. Ground One

First, Prado argues that he suffered ineffective assistance of counsel based on his attorney's alleged failure to bring the issue of whether Trooper Lindsay had reasonable suspicion to stop Prado before the Court. (Doc. 161 at 4; Doc. 162 at 11). Prado argues that his "attorney 'affectively waive' [sic] the chall[e]nge to the validity of the initial traffic stop – without assenting it with the defendant or even consulting it with him," which deprived him of his right to a fair trial. (Doc. 162 at 13). Prado raises multiple issues within ground one for a finding of ineffectiveness for his attorney's failure to raise the issue of the propriety of the initial traffic stop, including: (1) whether Prado's trial counsel's "decision to waive a legal concern or defense that the District Court have raised about the validity of the initial traffic stop, without consulting defendant, constituted an attorney's performance – '[that] felt bellow [sic] [an] objective standard of reasonableness' as defined by the *Strickland* rule"; (2) "[w]hether there was prejudice caused by the Defendant's Attorney['s] failure to perform[ ] with reasonableness"; (3) whether the actions of this Court and the Third Circuit "with regard to the validity of the traffic stop cured the defendant's attorney failures to perform[ ] reasonableness and to provide an adversarial proceedings for the court to resolve these issues"; and (4) [w]hether the Defendant's Appeal Attorney failed on the same grounds as

the Defendant's trial attorney or was he [barred or] limited by the scope of the appeal and its limited jurisdiction." (Doc. 162 at 10). Prado asserts:

> Counsel did not investigate the backgrounds, and history of the State Patrol Officer whose testimony was the bedrock of the case against the Defendant. Defendant counsel failed to pursue the validity of the initial stop providing evidence or testing the evidence presented by the prosecutor, and even more, the defendant's counsel failed to provide any factual evidence or factual argument with regard to the validity of the traffic stop when the own District Court expressed concerns about it, literally, counsel turn a blind eye to the defendan[t's] legitimate defenses.
>
> On February 15, 2017, "the [District] Court issued an opinion in which it expressed its concerns with whether the initial traffic stop was proper in light of the video evidence before the court ... The court, however noted that Defendant's brief stated that Defendant does not contest the propriety of the initial stop" and later stated that "effectively [Defendant] waive [sic]" contesting it at all.

(*Id.* at 14-15).

Prado's recitation of the case's procedural history is accurate, yet incomplete. After two evidentiary hearings on Prado's Motion to Suppress (Doc. 66), "the Court directed the parties to file additional briefs concerning whether Defendant's waiver of the issue precludes the Court from considering the propriety of the initial traffic stop and whether the initial stop was indeed lawful." (Doc. 95 at 5; Doc. 91 at 7-8). Both the Government and Prado's counsel filed briefs on these issues. (Doc. 93; Doc. 94). In his supplemental brief, Prado's counsel argued, "the objective video evidence of record does not demonstrate a traffic offense for which Trooper Lindsay was privileged to initiate a stop of Prado's vehicle" and

9

invited the Court to "consider the propriety of the stop, notwithstanding the procedural history of the case." (Doc. 94 at 4).

The Court then issued a Memorandum Opinion (Doc. 95) on May 1, 2017, considering the propriety of the stop and whether Trooper Lindsay had reasonable suspicion to stop Prado's vehicle. The Court explained:

> Although a review of video evidence in this case reveals that Defendant's car did not cross the fog line and drive on the shoulder of the road, the Court is aware that this whole episode occurred in a relatively short amount of time and that Trooper Linds[a]y did not have the benefit of carefully reviewing the video before he decided to pull Defendant's car over. Instead, Trooper Linds[a]y was making his observations while still safely operating his motor vehicle at highway speeds. Considering these circumstances – and in light of the fact that the video shows Defendant's car did veer towards the shoulder and touch the fog line – the Court finds that Trooper Linds[a]y's mistake of fact was a reasonable one. Further, in light of Trooper Linds[a]y's testimony regarding the presence of snow on the shoulder of the road, Defendant's car veering onto the shoulder had the potential of creating a safety hazard. Accordingly, the Court finds that Trooper Linds[a]y possessed reasonable suspicion that Defendant violated 75 Pa. C.S. § 3309(1).
>
> …
>
> In sum, the Court finds that the initial traffic stop was based on reasonable suspicion and therefore did not violate the Fourth Amendment. Accordingly, the Court will deny Defendant's Motion to Suppress on this basis. In so ruling, however, the Court notes this outcome is largely a result of the lower federal standard of reasonable suspicion. Trooper Linds[a]y's decision to stop Defendant's car when he did barely passes constitutional muster and the Court is dismayed that such a highly trained Pennsylvania State Trooper would approach the boundaries of constitutional action so closely.

(Doc. 95 at 10-12). After pleading guilty, Prado appealed to the Third Circuit, claiming that this Court erred in finding that Trooper Linds[a]y had reasonable suspicion to stop Prado's

vehicle for a suspected traffic violation. The Third Circuit affirmed this Court's ruling, holding "we must ultimately conclude that the entire traffic stop was predicated on what appears to have been a reasonable mistake of fact." *Prado*, 788 F. App'x at 898.

Therefore, issue of whether Trooper Lindsay had reasonable suspicion to initiate the stop of Prado's car was fully considered by this Court and by the Third Circuit. Although the issue was not initially raised by Prado's counsel, his counsel still provided a supplemental brief in support of the Court's ability to review the propriety of the traffic stop as a basis for the Court to grant Prado's Motion to Suppress. (*See* Doc. 94).

Prado claims that his counsel "failed to raise any factual argument or legal one to defends [sic] defendant's claim that such evidence should have been suppressed." (Doc. 162 at 19). However, Prado's counsel filed a Motion to Suppress, albeit on different legal theories than the issue of whether there was reasonable suspicion for the stop, and also subjected Trooper Lindsay to cross-examination during two suppression hearings. (*See* Doc. 74; Doc. 84). His counsel filed the Motion to Suppress and supporting briefs, all arguing for the suppression of the physical evidence obtained from the car and the incriminating statements he made during the stop. (*See* Doc. 66; Doc. 74; Doc. 84; Doc. 85; Doc. 86; Doc. 94). Thus, Prado's counsel did raise both factual and legal arguments in support of suppression, and his decision to pursue a motion to suppress using a different legal strategy than the one for which Prado advocates in the instant Motion is not objectively unreasonable. *See Strickland*, 466 U.S. at 689 ("Because of the difficulties inherent in

11

making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered a sound trial strategy." (internal citation and quotation omitted)).

Prado argues "there is a reasonable probability of a different outcome" had his attorney "investigated any colaborative [sic] motives in the Trooper's decision to initiate the Traffic Stop," investigated the trooper's background, or had the Court been given "the opportunity of making a judgment decision in an adversarial process and he was left alone with what was in [front] of the court." (Doc. 162 at 20). This Court disagrees. As discussed in detail above, the Court raised the issue that is the subject of Prado's first claim for ineffective assistance of counsel, and Prado's counsel submitted a supplemental brief advocating for the Court to consider the propriety of the stop. As stated above, the Court issued a Memorandum Opinion addressing (1) the propriety of the initial traffic stop; (2) the length of the traffic stop; (3) whether Prado voluntarily consented to Trooper Lindsay searing his car; and (4) whether Prado's Fifth Amendment rights were violated during the roadside interrogation or the statements he made at the police station. (*See generally* Doc. 95). The Court thoroughly evaluated the issues raised in ground one of Prado's instant Motion and ultimately determined that the initial traffic stop was constitutional.

Because the Court addressed this issue, Prado cannot "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland*, 466 U.S. 694. Prado has not established a reasonable probability that his attorney's initial failure to bring the Court's attention to the propriety of the traffic stop "undermine[s] confidence in the outcome" of Prado's case. *Id.*; *see also id.* at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

Similarly, Prado cannot show that "he would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). There is no nexus between his attorney's initial failure to raise the issue of the propriety of the traffic stop and Prado's eventual decision to plead guilty, which he did after the Court fully considered and decided whether the traffic stop and subsequent search were constitutional. In fact, as the Government acknowledged at the plea colloquy, Prado's guilty plea was conditioned on the preservation of his right to "appeal the suppression issue that this Court decided in this case, so that, even though he's pleading guilty and gives up other appellate rights, other matters to appeal, he maintains the right to appeal the suppression decision that this Court made in this case." (Doc. 156 at 9).[2] Prado's decision to plead guilty, conditioned on the

---

[2] At Prado's plea colloquy, the following exchange took place:

**THE COURT:** What I'm interested in, right now, is making sure the record is absolutely crystal clear as to what appeal rights are being preserved in this case.

**MR. SEMPA:** Correct. Your Honor, it is only the suppression decision that this Court rendered, allowing the evidence and the statements to come in that were allowed to come in.

13

preservation of his right to appeal this Court's decision on his motion to suppress, demonstrates that Prado had no intention of going to trial. There is nothing to suggest that Prado, but for his attorney's initial failure to raise the issue of the propriety of the stop, would have proceeded to trial rather than enter a guilty plea.

Because Prado cannot establish ineffective assistance or prejudice for ground one of his Motion, the Court will deny Prado's first ground for § 2255 relief.

### b. Ground Two

In his second ground for habeas relief, Prado asserts ineffective assistance of counsel for his attorney's alleged "fail[ure] to warn about deportation risk when removal was presumptively mandatory." (Doc. 162 at 5).

Contrary to his current arguments, Prado himself affirmed to the Court at his change of plea hearing that he discussed the issue of deportation with his attorney:

> **THE COURT:** Do counsel believe there's any other area I need to cover with Mr. Prado before I ask for his plea?
>
> **MR. SEMPA:** Yes, Your Honor, he does need to know that, as a possible consequence of his plea of guilty, he is subject to deportation from the United States as a possible consequence.

---

**THE COURT:** Is that correct, Mr. Cohen?

**MR. COHEN:** Yes, that is correct.

**THE COURT:** You understand that, Mr. Prado?

**THE INTERPRETER:** Yes, I do, Your Honor.

(Doc. 156 at 10).

14

**THE COURT:** Do you understand that, sir?

**THE INTERPRETER:** Yes, Your Honor.

**MR. COHEN:** Your Honor, may I have one question, please? Mr. Prado, you have discussed the issue of deportation not only with myself but also Mr. Savino of my office? You've discussed the issue of deportation, not only with myself but also Mr. Savino of my office, correct?

**THE INTERPRETER:** I don't understand.

**MR. COHEN:** Have you and I talked about the issue of deportation?

**THE INTERPRETER:** Yes.

**MR. COHEN:** And you've talked with Mr. Savino, also, in my office, about deportation; correct?

**THE INTERPRETER:** Yes.

(Doc. 156 at 14). Thus, the record clearly indicates that Prado "talked about the issue of deportation" with his attorneys. *See Padilla v. Kentucky*, 559 U.S. 356, 367 (2010) ("The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation.").

Even if Prado's claim that his counsel failed to advise him of the deportation risk was accurate, any error was remedied by the plea colloquy, during which the Government identified that "as a possible consequence of his plea of guilty, he is subject to deportation" and Prado himself confirmed for the Court that he had discussed deportation with his counsel. *See United States v. Fazio*, 795 F.3d 421, 427 (3d Cir. 2015) ("Any error in that advice was remedied by the District Court's in-depth colloquy and the language of the plea

agreement itself, and so Fazio was not prejudiced."). The Government raised the issue of deportation during the colloquy to ensure Prado had been advised of the risk of deportation before he entered his guilty plea, and Prado himself agreed that he had discussed deportation with his counsel. Defendant's claim that "[n]o consideration whatsoever was given to the defendant's immigration consequences," therefore, is incorrect.

Accordingly, the Court will deny Prado's motion for §2255 relief based on ineffective assistance of counsel for his counsel's alleged failure to advise him of the risk of deportation that accompanied his guilty plea.

### c. Ground Three: Ineffective Assistance of Appellate Counsel

In his third and final ground for habeas relief, Prado argues in the alternative Prado asserts:

> This is an ALTERNATIVE ISSUE in the event that, with regard to Ground One, the Government raises a defense of procedural bar to negate the fourth issue of ground one, that is, the legal impossibility of raising the ineffective assistance of ocunsel [sic] during the appeal with regard to the failures as to the traffic stop as argued on this motion; Defendant hereby claim and argue ineffective assistance of counsel of the appeal attorney jointly with that of trial attorney for failure to produce the defense of the invalidity of the traffic stop accordenly [sic].

(Doc. 162-1 at 4 (emphasis in original)).

The premise of ground three of Prado's Motion is erroneous. Irrespective of the Government's position, there was no procedural bar to Prado raising any issue on appeal as to the validity of the traffic stop and subsequent search. *See* FED. R. CRIM. P. 11(a)(2). Prado was fully within the rights of his conditional plea to raise any claim on appeal in

16

support of his argument that this Court incorrectly found that he was lawfully seized and the search of his vehicle was constitutional. *See Prado*, 788 F. App'x at 897 ("We review the District Court's factual findings for clear error but our review of the court's legal conclusions is plenary."). Importantly, Prado exercised his right to appeal this Court's denial of his motion to suppress, and the Circuit "conclude[d] that the entire traffic stop was predicated on what appears to have been a reasonable mistake of fact" and "affirm[ed] the District Court's denial of Prado's motion to suppress the heroin that was seized." *Id.* at 898. Therefore, the Court rejects Prado's argument in the alternative.

## V. CERTIFICATE OF APPEALABILITY

"A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate of appealability ["COA"]." *United States v. Bristol*, 2022 WL 2068048, at *8 (E.D.Pa. June 8, 2022) (citing 28 U.S.C. 2253(c)(1)). The petitioner must make a "substantial showing of the denial of a constitutional right" for the district court to issue a COA, which requires a showing that "reasonable jurists would find the district court's assessment of [his] constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2), *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, a COA is not warranted on any of Prado's claims because the Court finds that reasonable jurists would not find this Court's the resolution of Prado's constitutional claims debatable or wrong.

## VI. CONCLUSION

For the aforementioned reasons, the Court will deny Prado's *pro se* Motion Pursuant to 28 U.S.C.§ 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 161). A separate Order will follow.

_____
Robert D. Mariani
United States District Judge